IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOYCE DALTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-cv-1160-MJR-PMF |
| | ) |
| BOARD OF EDUCATION FOR, | ) |
| MOUNT VERNON TOWNSHIP | ) |
| HIGH SCHOOL DISTRICT 201, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

**REAGAN, Chief District Judge:**

Joyce Dalton was employed as an assistant principal at the Mt. Vernon Township High School from August 2010 to March 2013. Her job was to supervise student discipline and attendance, and in that capacity she reported to Principal Wes Olson from 2011 onward. Olson allegedly subjected Dalton to more onerous working conditions than other assistant principals, told Dalton that her job would be better accomplished by a man, and often referred to African Americans as "you people" when speaking to Dalton (who is herself African American). The friction between Olson and Dalton reached its peak in 2012 or 2013: according to the complaint, Dalton was given a negative performance evaluation in 2013, and the superintendent told her that her contract would not be renewed by the board because of the evaluation and other issues.

Dalton left Mt. Vernon High School and then sued it in federal court, claiming that she was discriminated against during her time at Mt. Vernon and that the events surrounding her departure were motivated by her race, her gender, and her decision to

1

file an agency charge. Mt. Vernon moved to dismiss on the grounds that it was not a suable entity; that motion prompted Dalton to amend her complaint to name the Board of Education for Mt. Vernon instead. On April 20, 2015, the Board moved to dismiss the amended complaint, too, arguing that Dalton's Title VII claims were untimely, that her § 1981 claims weren't viable, and that Dalton's discharge-related allegations weren't exhausted. The Court will take up the Board's motion to dismiss now.

The Board's Title VII timeliness argument is a good place to start. Title VII compels litigants to bring suit within ninety days of receiving a right to sue letter from the Equal Employment Opportunity Commission; that ninety day period operates like a statute of limitations, so if a litigant fails to bring suit in time, his suit is typically foreclosed. **42 U.S.C. § 2000e-5(f)(1);** *Prince v. Stewart*, **580 F.3d 571, 573 (7th Cir. 2009).** The Board seems to concede that Dalton's initial complaint against Mt. Vernon Township High School was brought within the ninety day period—Dalton received the right to sue letter on or around July 29, 2014, and she filed her initial complaint on October 27, 2014. That said, the Board maintains that the amended complaint, filed on February 5, 2015, was long out of time, and can't relate back to the date of the initial complaint because that complaint was brought against a non-entity. As the Board sees it, the federal rules look to Illinois law to determine whether a defendant has a legal existence for purposes of relation back, and Illinois law holds that suits initially brought against non-entities are so dead on arrival that relation back can't ever apply.

The Board's argument is half true in two ways—first, Illinois law doesn't seem to go that far when it comes to relation back; and second, federal law doesn't borrow quite

as much from Illinois law on relation back as the Board would like. Let's begin with the Board's misconception of Illinois law. The Board is correct that, under Illinois law, suits against non-entities are void ab initio—they are, in legal parlance, invalid from the outset. *Bowers v. Du Page Cnty. Board*, **539 N.E.2d 246, 250 (Ill. App. Ct. 1989).** That doesn't mean that Illinois law renders a suit against a misnamed party as unfixable—Illinois law provides for correction on misnomer grounds, *Ellis v. Borisek*, **580 N.E.2d 899, 902 (Ill. App. Ct. 1991)**, and even outside of misnomer, the Illinois courts have steered away from foreclosing all relation back in cases where the suit started with a non-entity defendant, *Greene v. Helis*, **625 N.E.2d 162, 164-65 (Ill. App. Ct. 1993);** *Marcus v. Art Nissen & Son, Inc.*, **586 N.E.2d 694, 697-98 (Ill. App. Ct. 1991)**. So if Illinois law applied across the board here for relation back, the Board would have no leg to stand on: Illinois law—and its allowance for misnomer and relation back—would not lead to dismissal merely because the first complaint named a non-entity.

The Board's real problem is that Illinois law has little to say about relation back here. Title VII is a federal cause of action, with its own federal statute of limitations, so the federal rules look only to state law to determine whether an entity can be sued—if he can, the suit goes forward; if he cannot, dismissal of that party is in order. *Oyler v. Nat'l Guard Ass'n of the United States*, **743 F.2d 545, 550-51 (7th Cir. 1984).** Tapping the capacity question from Illinois law doesn't mean that Illinois holdings concerning relation back for non-entity suits apply; the Supreme Court has been clear that, when Congress borrows from state law in setting the rules for a federal cause of action, it borrows only so much as necessary, leaving federal law to apply to other questions to

3

the extent feasible. *West v. Conrail*, 481 U.S. 35, 40 n.6 (1987). It follows that, for suits brought under federal statutes, federal courts apply Illinois law to the capacity question but federal law on relation back. *E.g., Carothers v. Office of the Transitional Adm'r*, No. 12-C-6620, 2013 WL 3388876, at *2-3 (N.D. Ill. July 8, 2013); *Lemmons v. Bd. of Cnty. Comm'rs*, No. 00-2297, 2002 WL 370227, at *2-3 (D. Kan. Feb. 21, 2002); *Foster v. Unknown Cook Cnty. Deputy Sheriff*, 914 F. Supp. 221, 224 (N.D. Ill. 1995).

Under federal law, whether a complaint naming a new entity relates back to the original complaint is a simple question of notice: did the new defendant, by virtue of the original suit, know that it was likely it would be sued? *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548 (2010). This test veers away from whether the plaintiff made a misstep in suing the wrong person or entity, and instead focuses on what the new defendant knew before he was actually named in the suit. If the "defendant who is sought to be added by the amendment knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead or in addition to suing the named defendant," relation back is proper absent prejudice to the defendant. *Joseph v. Elan Motorsports Tech. Racing Corp.*, 638 F.3d 555, 559-60 (7th Cir. 2011). The Board doesn't argue prejudice or a lack of knowledge here, and Dalton's point that the Board was aware of the original complaint by virtue of its service on the superintendent is well taken. So relation back applies, and the amended complaint was timely.

Next up is the Board's argument that portions of Dalton's complaint weren't mentioned to the Equal Employment Opportunity Commission in her charge, meaning that she can't bring any claims related to those allegations now. To bring a Title VII

4

claim, a plaintiff must exhaust his administrative remedies by filing a charge with the Equal Employment Opportunity Commission prior to suit. **29 U.S.C. § 794a(a)(1).** This exhaustion requirement provides the agency with the opportunity to investigate the dispute and try to solve it without court involvement, and given those goals, Title VII plaintiffs typically can't bring claims in a subsequent lawsuit that weren't included in their agency charges. *Teal v. Potter*, **559 F.3d 687, 691 (7th Cir. 2009).** The test for what's "included" in a charge is a liberal one, though—a plaintiff can bring suit on any claim that is "like or reasonably related to the allegation of the charge and growing out of such allegations." *Jenkins v. Blue Cross Mut. Hosp.*, **538 F.2d 164, 167 (7th Cir. 1976).**

The Board's argument as to exhaustion is a bit imprecise: it doesn't really engage with the "like or reasonably related" standard in its motion, says that termination-related "allegations" are unexhausted rather than termination-related "claims," and isn't clear as to whether it wants Dalton's allegation concerning her February 2013 termination letter taken out of the calculus, or if it wants that allegation and the purported June 2013 non-renewal of her contract also taken off the table. Either way, it's important to remember that failure to exhaust is an affirmative defense, and a motion to dismiss based on an affirmative defense can't be granted when the plaintiff's recovery is "still plausible." *Tamayo v. Blagojevich*, **526 F.3d 1074, 1086 (7th Cir. 2008).** A review of the complaint reveals that the allegations the Board dislikes could be linked to some of Dalton's Title VII claims in a way that could plausibly leave those claims exhausted. For instance, Dalton's agency charge says that she was counseled regarding employment performance issues, and if her alleged February termination was directly

5

linked to that event, a termination claim *might* be exhausted. *E.g., Anderson v. Clovis Mun. Schools*, 265 F. App'x 699, 706 (10th Cir. 2008); *Red v. Potter*, 211 F. App'x 82, 85 (3d Cir. 2006); *Browning v. AT&T Paradyne Corp.*, 838 F. Supp. 1568, 1572 (M.D. Fla. 1993). Once more, Dalton's agency charge checks the box for retaliation, and if her alleged June 2013 non-renewal actually happened and it was motivated by her decision to file an agency charge in March, then that claim, too, could be exhausted. *Horton v. Jackson Co. Bd. of County Comm'rs*, 343 F.3d 897, 898-99 (7th Cir. 2003). Given that the allegations targeted by the Board could support some plausibly exhausted claims, barring those allegations at the motion to dismiss stage would be premature.

The Board's last argument is that Dalton's § 1981 claims must fail for want of any allegation that the Board had a custom or policy that led to Dalton's injuries. *Jett v. Dallas Ind. School Dist.*, 491 U.S. 701, 736-37 (1989), and *Smith v. Chicago School Reform Bd. of Trustees*, 165 F.3d 1142, 1148-49 (7th Cir. 1999), teach that a plaintiff can't put forth a viable § 1981 claim against a school board merely by alleging that school executives engaged in discrimination— the plaintiff must establish that the board had a policy or custom that was discriminatory. Dalton's only response to the Board's argument is to bandy around invective: she says that the Board is attempting to get the Court to take its "eye off the ball," whatever that means, and she then cites to cases where school boards were the subject of lawsuits. The cases Dalton cites don't seem to have any bearing on whether the Board had a discriminatory custom or practice here, and she doesn't argue that anything in her complaint could be read to allege a custom or policy on the part of the Board in this case. So the § 1981 claims must be dismissed.

The question remains whether Dalton's § 1981 claims should be dismissed with prejudice or without prejudice. Normally dismissals are without prejudice, so that the claimant has at least one chance to cure if he wants to try. *Foster v. DeLuca*, **545 F.3d 582, 584 (7th Cir. 2008).** That said, when a claimant doesn't provide any indications as to what information he would provide in an amended complaint and fails to even ask for permission to file an amended complaint in his response to a motion to dismiss, dismissal with prejudice is allowed. *E.g., James Cape & Sons Co. v. PCC Constr. Co.*, **453 F.3d 396, 401 (7th Cir. 2006);** *Coates v. Ill. State Bd. of Educ.*, **559 F.2d 445, 451 (7th Cir. 1977).** Dalton says nothing about an amended complaint in her response and doesn't ask for leave to amend, so the § 1981 dismissal is with prejudice.

To sum up, the Board's motion to dismiss (Doc. 26) is **GRANTED IN PART** and **DENIED IN PART**. Dalton's § 1981 claims are dismissed **with prejudice**, but the remainder of the Board's motion to dismiss is denied.

**IT IS SO ORDERED.**

**DATED: February 11, 2016**

/s/ **Michael J. Reagan**
**Chief Judge Michael J. Reagan**
**United States District Court**